SEYMOUR PIELET et al., Plaintiffs-Appellants, v. PIELET BROTHERS
SCRAP IRON & METAL, INC., Defendants-Appellees.

First District (5th Division) No. 87—0015

Opinion filed May 13, 1988.—Rehearing denied June 14, 1988.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for appellants.

Foran, Wiss & Schultz, of Chicago (Jeff D. Harris and Karen A. Suizzo, of counsel), for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Seymour Pielet, Samuel Pielet, and Irving Pielet appeal from an order of the circuit court of Cook County requiring them to pay attorney fees and costs pursuant to section 2—611 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—611).

We affirm.

Plaintiffs were formerly owners and operators of the defendant corporation, along with another brother, Arthur. In March 1975, as part of a buy out of plaintiffs by Arthur, each of the plaintiffs signed identical employment contracts with defendant. Those contracts provided that plaintiffs would work for defendant from March 22, 1975, through January 1, 1977. For at least six months, and up to a maximum of one year, plaintiffs were to be employees of defendant, at a salary of $100,466 per year for the first six months and $151,949 per year for the second six months if plaintiffs continued as full-time employees for that additional period. For the remainder of the employment period, until January 1, 1977, plaintiffs would serve only as consultants, at a reduced salary of $2,500 per year. Apparently a primary purpose of these agreements was to permit plaintiffs to become fully vested in defendant's employee pension plan on January 1, 1977.

The parties modified these employment agreements in June 1975, immediately reducing their duties to those of consultants and also immediately reducing their salaries to $2,500 per year. The plaintiffs were still to remain on defendant's payroll as consultants until their interests in the pension plan fully vested on January 1, 1977.

The employment agreement had also included covenants by the plaintiffs not to compete with the defendant. On June 30, 1976, defendant discharged plaintiffs and terminated their interests in the pension plan because they had allegedly violated the covenants not to compete. Plaintiffs subsequently prosecuted a claim in Federal court alleging a violation of Federal law and also alleging breach of the March 1975 employment agreement. The defendant filed an answer and amended counterclaim asserting that plaintiffs had forfeited their pension rights and seeking, *inter alia,* restoration of over $50,000 which defendant alleged was paid to plaintiffs under the March 1975 employment agreements. Plaintiffs' answer to defendant's amended

counterclaim denied that the salaries provided for in the March 1975 employment agreement were fully paid, stating that those agreements were amended June 2, 1975, and pursuant to the amendment the salary figures of $100,466 and $151,949 were no longer applicable. In a deposition relating to the Federal case plaintiff Irving Pielet admitted that in June 1975 he and the other plaintiffs had agreed to immediately go on a consultant basis because defendant could no longer afford their salaries. In the Federal trial itself the jury was informed by the judge, pursuant to a stipulation of facts, that plaintiffs had agreed to modify the original agreement and had become consultants at greatly reduced pay scales. Also at trial plaintiff Seymour Pielet testified that beginning in June 1975 he had become a consultant for defendant at $2,500 a year.

Plaintiffs received a jury verdict in their favor of over $800,000, representing their accrued pension funds. The Federal district court also dismissed defendant's amended counterclaim, thus enabling plaintiffs to retain the $50,233.02 paid to them in salaries pursuant to the employment agreements. In the ensuing appeal plaintiffs in their appellees' brief noted that they had agreed to a written modification of the original employment agreement, immediately reducing their salaries to a nominal consulting fee. The Seventh Circuit Court of Appeals, in its opinion affirming the trial court's judgment, also noted that the written modification of the employment agreement immediately reduced plaintiff's salaries to a nominal consulting "salary." *Pielet v. Pielet* (7th Cir. 1982), 686 F.2d 1210, 1211.

Three years later the plaintiffs filed their complaint in the instant case, each seeking $166,486.32 in salaries allegedly past due under the March 1975 employment agreements. The complaint made no mention of the June 1975 modification reducing plaintiffs' salaries to $2,500 per year.

Defendant moved to dismiss on the basis of *res judicata*, citing the existence of the June 1975 modification and the numerous acknowledgements of that agreement in the prior Federal action. Defendant also contended that the entire premise of the complaint was false in that plaintiffs claimed entitlement to salaries which they knew had been reduced substantially by the June 1975 modification. In response plaintiffs contended that the June 1975 modification was lacking in consideration on the part of the defendant. Plaintiffs also contended that *res judicata* was not a bar because their entitlement to salaries was not actually litigated in the prior Federal action. However, in oral argument on the motion to dismiss, counsel for the plaintiffs admitted that the June 1975 agreement was a binding modifica-

tion agreement. Counsel also did not dispute the court's statement that in the Federal action plaintiffs had admitted that pursuant to the modification agreement the prior salary figures were no longer applicable. The circuit court dismissed the plaintiffs' complaint with prejudice. Plaintiffs have not appealed from that determination.

Defendant then moved for the assessment of costs and fees against plaintiffs, again noting the *res judicata* bar and the numerous acknowledgements of the validity of the June 1975 modification by plaintiffs in the prior Federal action. Defendants argued that with the knowledge of what occurred in the prior Federal suit it was untruthful for plaintiffs to assert in this cause that they were entitled to the original full-time salaries. The circuit court agreed with the analysis, stating:

> "The testimony, as I say, set forth in the record here of the Federal case clearly indicates that the individual [*sic*] knew not only about the modification but more importantly the terms of the modifications, and why they would bring an action in the State court based on what they swore they knew is beyond me. And certainly it seems to me to come within the purview of 2—611."

Accordingly, the court granted the defendant's motion for attorney fees and costs. After consideration of extensive evidence on the amount of those fees and costs the court entered judgment of $23,302.05 for defendant.

OPINION

On appeal plaintiffs do not contest the reasonableness of the judgment award. They contend that no award should have been made because no allegation in their complaint was untrue.

■ Section 2—611, as in effect at the time judgment for defendant was entered, provided in pertinent part:

> "Allegations and denials, made without reasonable cause and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court upon motion made within 30 days of the judgment or dismissal." (Ill. Rev. Stat. 1985, ch. 110, par. 2—611.)

This provision was intended to provide the means to penalize those litigants pleading frivolous or false matters as well as those bringing suit without any legal basis. (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297; *Ready v. Ready* (1961), 33 Ill. App. 2d 145,

178 N.E.2d 650.) It has been repeatedly held that to sustain an award of fees the movant must establish that the pleader made an allegation or denial which was untrue and which was made without reasonable cause. (*Sullivan v. McGaw* (1985), 134 Ill. App. 3d 455, 480 N.E.2d 1283.) But as defendant has noted in its appeal brief, the courts have also held that fees may properly be assessed where the court finds that a party has instituted a suit which that party knew or should have known would be barred by *res judicata*. (*Schroeder v. Busenhart* (1967), 80 Ill. App. 2d 431, 225 N.E.2d 702; *Elston-Damen Currency Exchange, Inc. v. Sheon* (1964), 46 Ill. App. 2d 218, 197 N.E.2d 143.) Plaintiffs have not disputed the validity of these cases on appeal, nor have they sought to distinguish them from the case before us. Nor, as we have noted, have plaintiffs sought to appeal from the circuit court's determination that *res judicata* was a bar to this action.

Plaintiffs contend that they brought this action to test the validity of the June 1975 modification of their employment contracts. But plaintiffs did not even acknowledge the existence of this modification in their complaint. Furthermore, as we have noted, plaintiffs' trial attorney admitted that the modification was a binding agreement.

■ ■ The decision of the trial court to grant or deny a petition under section 2—611 will be reversed only upon a showing of a clear abuse of discretion. (*Pole Realty Co. v. Sorrells* (1981), 84 Ill. 2d 178, 417 N.E.2d 1297.) In this cause the plaintiffs had in a prior action admitted the validity of the June 1975 contractual modification and had chosen not to contest that aspect of their employment agreements, even though in a counterclaim the defendant had sought the return of salaries paid to them. Despite these facts the plaintiffs brought a second action claiming entitlement to salaries based on the original agreements, without even alluding to the June 1975 modification. Based on these factors the circuit court was clearly justified in determining that plaintiffs knew or should have known that their second action was barred by *res judicata* and that therefore costs and attorney fees could be assessed against them.

■ In its brief on appeal defendant has also sought imposition of costs and fees incurred in its defense of this appeal. Such sanctions have also been held to be proper under section 2—611 where the appeal was held to constitute a needless continuation of a baseless lawsuit. (*Arounsakul v. Flanagan* (1987), 155 Ill. App. 3d 223, 507 N.E.2d 1; *Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387; *McCormick v. Louis Joliet Bank & Trust Co.* (1983), 114 Ill. App. 3d 205, 448 N.E.2d 905; *Manchester Insurance & Indemnity Co. v. Strom* (1970), 122 Ill. App. 2d 183, 258

958

N.E.2d 150.) However, only in *McCormick* were such costs of appeal allowed where the appellant was not also appealing from the disposition of the underlying lawsuit. Under the circumstances of this case we do not deem it appropriate to grant defendant's request for additional costs and fees incurred in defending this appeal. Accordingly, we affirm the judgment of the circuit court.

Judgment affirmed.

PINCHAM and MURRAY, JJ., concur.